IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RANDY M. COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:02-cv-307-GPM |
| ) | |
| CHRIS EVANS, MARC HODGE, KELLY ) | |
| JOHNSON, and JOSEPH CAMPENELLA, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Chief District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the Defendants, Chris Evans, Marc Hodge, Kelly Johnson, and Joseph Campanella, on March 1, 2005 (Doc. 21).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED**, that **JUDGMENT** be entered in favor of the Defendants, and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

On March 13, 2002, the Plaintiff, Randy M. Cook, was assaulted by his cellmate, Edward Swift, at the Lawrence Correctional Center (hereinafter "LCC").  As a result of this assault, in which Swift shoved Cook in the back with a box, Cook suffered from back pain, swelling, and tenderness.  (3/9/05 Plaintiff's Response (Doc. 23) (hereinafter "Pl. Resp."), Ex. 4.)  He asserts that this assault could have been avoided had the defendants, all officers at the jail, heeded his request to have Swift, and another inmate, Charles Rucker, placed on his "enemies" list.  Cook

has identified as Defendants, Chris Evans, Marc Hodge, and Kelly Johnson, as officers and investigators at the LCC, and Joseph Campenella, who was an Assistant Warden at the LCC. Cook states that he informed each of these Defendants that Swift was a threat and that none of the Defendants protected him from the assault.

Cook testified that three months prior to his transfer to the LCC, he had an argument with Swift about a gambling debt while they were both incarcerated at the Stateville Correctional Center. (1/24/05 Randy M. Cook Deposition, Def. Ex. A (hereinafter "Cook Dep.") pp. 11-13.) Cook stated that he informed a counselor at Stateville to place Swift on his enemies list; however, this was not done. (Cook. Dep. p. 11, 18.) Indeed, Cook and Swift were transferred to the LCC on the same day (and on the same bus); and, after Cook was removed from his initial placement in segregation at the LCC, he was placed in the same cell as Swift. (Cook Dep. at pp. 19, 38, 70.) After his transfer to the LCC, Cook had conversations with Defendants Hodge, Campenella, and Johnson regarding Swift, their confrontation at Stateville, and his request that they place Swift on his enemies list at the LCC. (Cook Dep. p. 26.) Upon hearing these concerns, the Defendants investigated Cook's claims.

Defendant Campanella was the Assistant Warden of Operations at the LCC during the relevant time period and was responsible for the inmates and security. (Def. Ex. B, Joseph Campanella Affidavit (hereinafter "Campanella Aff."), ¶¶1, 2.) Defendant Hodge was a Lieutenant in the Internal Affairs Office and directly supervised the investigation of Cook's concerns, as requested by Campanella. (Def. Ex. C, Marc Hodge Affidavit (hereinafter "Hodge Aff."), ¶¶2, 4-5.) Defendants Johnson and Evans were tasked with interviewing Cook, Swift, and Rucker; and, they reported their findings in Investigational Interview Forms to Hodge.

(Hodge Aff. ¶¶6-7.) These interviews occurred on January 3, 2002 prior to the placement of Swift and Cook in the same cell. (Def. Ex. D, Kelly Johnson Affidavit (hereinafter "Johnson Aff."), ¶5.) Hodge, after reviewing the Interview Forms and contacting Stateville, determined that Cook and Swift were not enemies. (Hodge Aff. ¶8.) Hodge reported this finding to Campanella in a letter dated January 4, 2002. (Campanella Aff., Ex. 1.) Campanella concurred with Hodge's findings and recommendations. (Campanella Aff., Ex. 1, p. 2.)

The interviews conducted by Johnson and Evan revealed that Rucker indicated that he has no enemies at the LCC and no reason to believe that anyone thought he was an enemy. (Campanella Aff., Ex. 1, p. 4.) Rucker also stated that he had no problems at Stateville. (Campanella Aff., Ex. 1, p. 4.) Swift volunteered that Cook (who was in segregation at the time) "might think Swift has a problem with him." (Campanella Aff., Ex. 1, p. 8.) When Johnson inquired further, Swift stated that he had "words" with Cook at Stateville and stated that it "was no big deal to him." (Campanella Aff., Ex. 1, p. 8.) Johnson further reported that:

> I asked I/M Swift if this was going to be a problem for him as far as I/M Cook goes? I/M Swift stated that there is no problem it is all forgotten as far as he is concerned. I/M Swift says he does not want any problems here he is just looking to do his time and get out of here.
>
> (Campanella Aff., Ex. 1, p. 8.)

When Cook was interviewed, he stated that he had a "small run-in" (as characterized by the interviewer, Johnson) with Swift and Rucker in November, 2001 at Stateville where they had threatened Cook's family. (Campanella Aff., Ex. 1, pp. 1, 6.) Cook indicated that he was afraid of Swift, Rucker, and other inmates at the LCC because he was involved in a gang riot at Menard Correctional Center in 1989 during which he as stabbed. (Campanella Aff., Ex. 1, p. 6.)

3

Cook was afraid of a similar problem at the LCC. (Campanella Aff., Ex. 1, p. 6.) In a January 3, 2002 grievance, Cook reiterated his concerns and prediction that Swift will cause him harm. (Pl. Resp. Ex. 1.) In Hodge's recommendation to Campanella, he stated that, based on statements made by Cook in segregation, he was using the enemies excuse to secure a transfer to a different institution. (Campanella Aff., Ex. 1, p. 2.) He further stated that there was no "substantial information which would indicate that Inmate Cooks [sic] Allegations are factual." (Campanella Aff., Ex. 1, p. 2.) Therefore, Swift was not placed on Cook's enemies list and subsequently shared a cell with him. Each of the Defendants indicated that they had no control over inmate housing or the placement of inmates in particular cells.

After the incident between Cook and Swift, Swift was placed on Cook's enemies list. Cook now is housed at the Pontiac Correctional Center.

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate

of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  Plair v. E.J. Brach & Sons, Incorporated, 105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836.  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994).  *See also* Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; *Cf*. Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986);

*See also*: Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v.

5

State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

The Defendant's second argument, which will be addressed first, is that they are entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.") In determining whether the Defendants are entitled to qualified immunity, the Court must consider two questions: 1. "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, if the answer is yes, 2. was "the right clearly established?" Saucier, 533 U.S. at 201; See also Green v. Butler, ___ F.3d ___, ___, 2005 WL 2018888, *8-9 (7th Cir. 2005). With respect to the first question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

As this matter is now before the Court on a motion for summary judgment, the issue of whether the Defendants are entitled to qualified immunity can be determined on the undisputed facts before the Court. To the extent that there are disputed facts, those will be considered in a light most favorable to the Plaintiff. See generally, Board v. Farnham, 394 F.3d 469, 476 (7th Cir. 2005). There can be no doubt that the Plaintiff's right to have reasonable measures taken to assure his safety is a clearly established constitutional right. Prison officials are obligated to "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832-833 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)); See also Velez v. Johnson, 395 F.3d 732, 735 (7th Cir. 2005). Even though this right is clearly

established, it does not follow, that "'a reasonable official [in the situation confronted by the Defendants] would understand that what he is doing violates that right.'" Id. at 477 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

It is clear from the evidence that the Defendants were aware of the risk to the Plaintiff as he had verbally informed Hodge, Campenella, and Johnson that he believed that Swift would attack him. Defendant Evans also must have been aware of the risk as he interviewed the Plaintiff himself regarding his concerns. There is no doubt that the threat of physical violence is an excessive risk to the Plaintiff's safety. However, the evidence reveals that the Defendants did not take the next step of drawing an inference that the Plaintiff was in substantial risk of serious harm based on their investigation. The Seventh Circuit Court of Appeals has repeatedly held that "prison official who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent. Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002) (citing Farmer, 511 U.S. at 847); See also Fisher v. Lovejoy, 414 F.3d 659, 664 (7th Cir. 2005); Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 765 (7th Cir. 2002). In this case, the officers acted reasonably and did not, by their conduct, violate the Plaintiff's Constitutional right by being deliberately indifferent to his safety.

In response to the Plaintiff's complaint, both Swift and Rucker were interviewed. Hodge also contacted Stateville to verify what the Plaintiff alleged – that he had informed the Stateville officials of his fears and had asked them to place Swift on his enemies list. (Hodge Aff. ¶8.) As a result of the investigation, both Swift and Rucker stated that they had no problems with the Plaintiff and Hodge learned that Stateville had no information concerning an altercation between

the Plaintiff and Swift and no records that would indicate that Swift was on the Plaintiff's enemies list.[1]  (Hodge Aff. ¶8.)  In addition, Hodge himself concluded, based on statements made by the Plaintiff in his presence, that the Plaintiff was merely declaring an enemy in order to be transferred to another facility.  From this investigation, Hodge reasonably concluded that Swift was not an enemy of the Plaintiff.

Of course, there is no dispute that Swift did attack the Plaintiff and that Swift subsequently was placed on the Plaintiff's enemies list.  However, hindsight cannot lead to a finding of deliberate indifference and does not render the Defendants' actions unreasonable.[2]  At most, the Plaintiff may have shown that the Stateville officers (who are not parties to this lawsuit) were negligent in not heeding his request to have Swift placed on his enemies list.  He may also have shown that the Defendants were mistaken, after conducting the investigation, in believing that Swift posed no threat and that the Plaintiff was merely trying to manipulate the system.  However, as a matter of law, this Court cannot find that the officers' conduct violated a Constitutional right.  The officers acted reasonably and with sufficient alacrity.  While the Plaintiff did have a constitutional right to be protected against the harm from other inmates, by

---

[1] The Plaintiff testified that he did inform the officials at Stateville of his problems with Swift and did ask them to place Swift on his enemies list.  An inference to be drawn from Hodge's investigation, which revealed that Stateville had no record of this, would appear to contradict the Plaintiff's testimony.  While this fact may be in dispute, it is not a material fact.  Regardless of whether the Plaintiff had spoken to the Stateville officials, the fact remains that they did not verify his statements to Hodge.  There has been no showing that Hodge unreasonably relied on the information supplied by Stateville in making his recommendation.

[2] In addition, while the Defendants, or at least Campanella, may have had the ability to affect the Plaintiff's cell assignment by placing Swift on his enemies list, it is clear that none of the Defendants played any role in the actual placement of the Plaintiff in the same cell as Swift. (Campanlla Aff. ¶10; Hodge Aff ¶12; Johnson Aff. ¶11-12.)

conducting interview, contacting the Plaintiff's previous prison, and relying on those statements and the Plaintiff's perceived intent, the Defendants here did not act unreasonably. They simply were not deliberately indifferent. As such the Defendants are entitled to qualified immunity. This conclusion renders the analysis of the second prong of Saucier unnecessary.

One final note, each of the parties refers to the prison's policy of allowing inmates who fear for their safety to have themselves placed in segregation. The Plaintiff testified that he did not want to do this because "Seg is not a happy place." (Cook Dep. p. 69.) It is also undisputed that in order to be placed in segregation, an disciplinary ticket must be issued that may lead to subsequent consequences like loss of good conduct credit and other types of punishment. The issue of whether this particular policy is an appropriate solution to inmate safety concerns is not before the Court as it is not a part of the Plaintiff's complaint. The Plaintiff merely has asserted that the Defendants, in their individual capacity, were personally responsible for the attack by Swift. This is the only claim in the Complaint and the only issue identified by Chief District Judge Murphy in his June 30, 2003 referral order. As such, the question of the availability of this solution, and its propriety in this situation, will not be considered and any disputes as to this matter are irrelevant to this lawsuit.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment filed by the Defendants, Chris Evans, Marc Hodge, Kelly Johnson, and Joseph Campanella, on March 1, 2005 be **GRANTED** (Doc. 21), that **JUDGMENT** be entered for the Defendants, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10)

days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 14, 2005**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**